CAMPBELL *v.* BROWN.

(*Nashville.*    January  19,  1898.)

1. BILLS AND NOTES.  *Purchaser's rights.*

  The purchaser of a note at a rate of discount equivalent to 40
    per cent. per annum cannot, though innocent of any wrong,
    recover more than the amount actually paid against the maker
    in fraud of whose rights the note was transferred.  (*Post, pp.*
    *246, 247.*)

  Cases cited and approved: Hunt *v.* Sanford, 6 Yer., 387; Merritt
    *v.* Duncan, 7 Heis., 163; Petty *v.* Hannum, 2 Hum., 102; Holman
    *v.* Hobson, 8 Hum., 127; May *v.* Campbell, 7 Hum., 450; Green
    *v.* Stuart, 7 Bax., 422; Oppenheimer *v.* Bank, 97 Tenn., 34.

2. SAME.  *Same.*

  Where the purchaser of a note in exchange for personal property
    retains the title of the property to secure the purchase price,
    and, after notice that the note had been transferred to him in
    fraud of the maker's rights, releases the said security, his re-
    covery on the note will be reduced by the value of the property
    released.  (*Post, p. 248.*)

FROM  DAVIDSON.

Appeal  in  error  from  Circuit  Court  of  Davidson
County.  JOHN  W.  CHILDRESS,  J.

J.  P.  BROWN  and  E.  A.  PRICE  for  Campbell.

WHITMAN  &  GAMBLE  for  Brown.

Campbell *v.* Brown.

WILKES, J.　This cause is before us on application to rehear by both plaintiff and defendant. The suit, was brought before a Justice of the Peace on a note for $200.　On appeal to the Circuit Court, it was heard before the trial Judge without a jury, and judgment was rendered for the note and interest. Defendant appealed to this, Court.　At a former day of the term the judgment of the Court below was modified, and now, on the application of both parties, is reheard.　It appears that on February 7, 1895, Brown executed his note for $200, payable to Pearson at ninety days, in order that Pearson might negotiate it and get the proceeds for Brown's benefit.　Pearson, instead of negotiating it for Brown's benefit, borrowed from Dudley $55 for his own use, giving his note therefor, and pledging the $200 (Brown) note as collateral.　Pearson then sold the $200 note to Dr. H. T. Campbell, upon the terms that Campbell would pay off the $55 note to Dudley, and would transfer to him a phaeton valued at $125, all of which was done.　Campbell being now the owner of the $200 note, notified Brown that he held it, and would expect payment.　Brown informed him that the note had been fraudulently obtained from him, and transferred fraudulently by Pearson, and that he (Campbell) must look to Pearson for its payment.　Campbell, being fearful that litigation would arise, bought back from Pearson the phaeton, and gave him for it $60 in money and a buggy valued at $40.　When Campbell sold the phaeton to

Campbell *v.* Brown.

Pearson he retained the title to it until the $200 note should be paid. The title to the phaeton was in Campbell when he was informed by Brown that the note had been fraudulently obtained and transferred, and also when he bought the phaeton back from Pearson. It is claimed, on the one hand, that Campbell is an innocent purchaser and *bona fide* holder of the $200 note, and entitled to recover on it, and, on the other hand, that he is an innocent purchaser only to the extent of the $55 paid to Dudley, and should therefore only recover that amount. It may be true, as is contended, that when Campbell paid Dudley the $55 and let Pearson have the $125 phaeton, he was in ignorance of the fraud practiced by Pearson on Brown, and, in that sense, may have been an innocent purchaser and holder, still, he gave for the $200 note, due in less than ninety days, only $180, that is, the phaeton valued at $125 and the $55 paid to Dudley, or at a rate of discount of about 40 per cent. per annum. Such a transaction can hardly constitute a person an innocent purchaser and *bona fide* holder for full value. *Hunt* v. *Sanford*, 6 Yer., 387; *Merritt* v. *Duncan*, 7 Heis., 163; Tiedeman on Commercial Paper, Sec. 291. But, conceding that Dr. Campbell can occupy the status of an innocent purchaser or *bona fide* holder, the note being fraudulent and transferred wrongfully, he can only recover to the extent of the sum actually paid for it.

In other words, the fraudulent note is negotiated

in due course of trade only to the extent of the actual amount paid by him for it. *Petty* v. *Hannum,* 2 Hum., 102; *Holman* v. *Hobson,* 8 Hum., 127; *May* v. *Campbell,* 7 Hum., 450; *Green* v. *Stuart,* 7 Bax., 422; *Oppenheimer* v. *Bank,* 13 Pickle, 34; 1 Daniel on Neg. Inst., Sec. 758. If there were, therefore, nothing else in the case, plaintiff would be entitled to recover the sum paid by him, to wit: $180, and interest.

But we are of opinion that Dr. Campbell, when he was informed of the fraud practiced upon Brown, the maker of the note, was obligated to hold the title to the phaeton to indemnify Brown against loss, or, at least, he could not surrender the title to Brown's prejudice, nor could he allow the phaeton to be sold, or buy it himself, except on condition that he apply the value of the phaeton *pro tanto* to satisfy the note. Having retaken and repurchased the phaeton, and thus given up the security which, under the facts, he was obligated to hold for Brown's benefit, he must be held liable for its value as a credit upon the $200 note, so that he is entitled to recover only the amount paid Dudley, $55, with interest, and for this amount, and all costs, judgment will be entered. The judgment of the Court below will be modified accordingly.